**FILED**

# UNITED STATES DISTRICT COURT

FEB 15 2019

for the

Eastern District of California

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 2:19-MJ-0032 CKD |
| JASON ARNOLD, | ) |
| DAVID WHITE, and | ) |
| ALICIA MCCOY | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | |

# SEALED

## CRIMINAL COMPLAINT

I, Daniel M. Bryant the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   May 23, 2018 – February 5, 2019   in the county of   Sacramento   in the

  Eastern   District of   California  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a Controlled Substance |
| 21 U.S.C. § 846 | Conspiracy to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Daniel M. Bryant
Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   2/15/2019   3:21pm

_____
*Judge's signature*

City and state:   Sacramento CA

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Daniel M. Bryant, having been duly sworn, do hereby depose and state the following:

## I.        INTRODUCTION AND AGENT BACKGROUND

1.   I am a Special Agent with Federal Bureau of Investigation ("FBI"), presently assigned to the Sacramento Field Office.  I have been employed as a Special Agent since January 2001.  In the course of my employment with the FBI, I have conducted or been involved in more than 100 criminal investigations to include, but not limited to violations involving public corruption, white collar, violent crime, organized crime and cybercrime.

2.   I have attended more than 1,000 hours of training in various aspects of criminal investigation, and I have attended classes and seminars dealing specifically with financial investigative techniques and cyber-related crime. As a Special Agent with FBI, part of my duties include the investigation of criminal violations as proscribed by 21 U.S.C § 841 (narcotics trafficking) and 21 U.S.C § 846 (drug conspiracy).  Moreover, as an FBI Special Agent, I am a "Federal Law Enforcement Officer," authorized to investigate violations of the laws of the United States and to execute search and seizure warrants issued under the authority of the United States.

3.   I have conducted and participated in criminal investigations for violations of federal and state laws including, but not limited to, narcotics trafficking, money laundering, firearms, fraud, and other organized criminal activity.  I have prepared, executed, and assisted in numerous search and arrest warrants.  I have also conducted and participated in criminal and administrative interviews of witnesses and suspects.  I am familiar with the formal methods of illegal narcotics investigations, including, electronic surveillance, visual surveillance, general questioning of witnesses, search warrants, confidential informants, the use of undercover agents, and analysis of financial records.  I have participated in investigations of organizations involved in the manufacture, distribution, and possession with intent to distribute controlled substances.

1

## II.    PURPOSE

4.    The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show that there is sufficient probable cause for the requested arrest warrants and does not set forth all of my knowledge about this matter. Rather, I make this affidavit in support of an application for a criminal complaint and arrest warrants for:

    a.    JASON ARNOLD;

    b.    DAVID WHITE; and

    c.    ALICIA MCCOY,

For violations of:

    a.    Title 21 U.S.C. § 841(a)(1) (Distribution of a Controlled Substance);

    b.    Title 21 U.S.C. § 846 (Conspiracy to Distribute a Controlled Substance).

## III.    OVERVIEW

5.    During this investigation, federal law enforcement officers obtained evidence establishing probable cause to believe that JASON ARNOLD, DAVID WHITE, and ALICIA MCCOY are selling heroin on the darkweb. In doing so, JASON ARNOLD, DAVID WHITE, and ALICIA MCCOY are:

    a.    Distributing controlled substances.

        i. Under 21 U.S.C. § 841(a)(1), "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

    b.    Conspiring to distribute controlled substances.

        i. Under 21 U.S.C. § 846, "any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

2

## IV.    TECHNICAL BACKGROUND

6.   Digital currency (also known as crypto-currency) is generally defined as an electronic-sourced unit of value that can be used as a substitute for legal tender (i.e. currency created and regulated by a government.)  Digital currency exists entirely on the Internet and is not stored in any physical form.  Digital currency is not issued by any government, bank, or company and is instead generated and controlled through computer software operating on a decentralized peer-to-peer network.  Digital currency is not illegal in the United States and may be used for legitimate financial transactions.  However, digital currency is often used for conducting illegal transactions, such as the sale of controlled substances.

7.   Bitcoin is a type of digital currency.  As of February 15, 2019, one Bitcoin is worth approximately $3,566.  Bitcoin payments are recorded in a public ledger that is maintained by peer-to-peer verification and is thus not maintained by a single administrator or entity. Individuals can acquire Bitcoins either by "mining" or by purchasing Bitcoins from other individuals.  An individual can "mine" for Bitcoins by allowing his/her computing power to be used to confirm the cryptographic integrity of transactions on a cryptocurrency's public ledger (referred to as a blockchain).  Individuals are rewarded for this by being given newly created Bitcoins.

8.   An individual can send and receive Bitcoins through peer-to-peer digital transactions or by using a third-party broker.  Such transactions can be done on any type of computer, including laptop computers and smart phones.

9.   Bitcoins can be stored in digital "wallets."  A digital wallet essentially stores the access code that allows an individual to conduct Bitcoin transactions on the public ledger.  To access Bitcoins on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key.")  The public address can be analogized to an account number while the private key is like the password to access that account.

10.   Even though the public addresses of those engaging in Bitcoin transactions are recorded on the public ledger, the true identities of the individuals or entities behind the public addresses are not recorded.  If, however, a real individual or entity is linked to a public address, it would be

3

possible to determine what transactions were conducted by that individual or entity. Bitcoin transactions are, therefore, described as "pseudonymous," meaning they are partially anonymous.

11.   Through the dark web or darknet, i.e. websites accessible only through encrypted means, individuals have established online marketplaces, such as the Silk Road, for narcotics and other illegal items. These markets often only accept payment through digital currencies, such as Bitcoin. Accordingly, individuals involved in selling narcotics on the darknet, and thus receiving payment in cryptocurrency, need to sell their cryptocurrency in exchange for legal tender.

12.   Dark web sites, such as Silk Road, AlphaBay, Wall Street, and Dream, operate on "The Onion Router" or "TOR" network. The TOR network ("TOR") is a special network of computers on the Internet, distributed around the world, that is designed to conceal the true Internet Protocol ("IP") addresses of the computers accessing the network, and, thereby, the locations and identities of the network's users. TOR likewise enables websites to operate on the network in a way that conceals the true IP addresses of the computer servers hosting the websites, which are referred to as "hidden services" on the TOR network. Such "hidden services" operating on TOR have complex web addresses, which are many times generated by a computer algorithm, ending in ".onion" and can only be accessed through specific web browser software designed to access the TOR network.

## V.   FACTS ESTABLISHING PROBABLE CAUSE

### A.  *Exploratory purchases of heroin*

#### i.  *First Undercover Purchase*

13.  On or about May 23, 2018, case agents accessed the Dream Market via the TOR network and browsed items for sale from the vendor moniker SICKNESSVERSION2. Dream Market is a darkweb marketplace that offers the sale of illegal goods and services. It only accepts payment in cryptocurrency and is overt in its criminal nature.

14. Under the terms and conditions of the vendor, SICKNESSVERSION2 stated "Our original account ("sickness") was hacked. We are starting a new one, hence the version 2." Case agents

4

then completed a purchase of 5 grams of "PURE GUNPOWDER HEROIN (UNCUT)."   Case agents requested the parcel to be shipped to a USPIS-controlled location in the Eastern District of California.   At the time of the purchase, SICKNESSVERSION2 claimed to ship from the United States.

15.   On the SICKNESSVERSION2 vendor page on Dream Market, the vendor states that "we take pride in the fact our products are uncut … [w]e are fortunate to get our product direct from the source, as it is imported from South America."   SICKNESSVERSION2 lists for sale the following products: "pure gun powder heroin" ranging from .5 grams to 20 grams per order and "uncut ice" (referring to crystal methamphetamine) ranging from 1 grams to 20 grams per order. Though its listed prices for heroin vary per listed item for sale, SICKNESSVERSION2 charges around $90 per gram, with discounts given for larger orders, as shown below:



16.   In the reviews section for SICKNESSVERSION2 on Dream Market, each transaction is automatically populated with a review and an associated date and price.   If the customer does not enter a review, the review states "[e]nter your comments here."   At the time of this undercover purchase, SICKNESSVERSION2 had approximately 170 reviews with a 4.81 (out of 5) star rating. The majority of customer reviews for SICKNESSVERSION2 are positive and indicate that the vendor is reliable, as show below:

| | | | |
|---|---|---|---|
| 1d 21h ☆ ☆ ☆ ☆ ☆ | Enter your comments here | p . . . y | ~ ฿0.02 |
| 4d    ☆ ☆ ☆ ☆ ☆ | Thanks for all your help! | j . . . y | ~ ฿0.0012 |
| 1d 12h ☆ ☆ ☆ ☆ ☆ | You are stupid if you are ordering the BIG H from anyone else. SV2 is always on point, they have the sweetest stealth in the game and they always ship within 24hours of marking received. Long time with this crew and they have set a new bar for the DM. | g . . . x | ~ ฿0.05 |
| 4d    ☆ ☆ ☆ ☆ ☆ | *****Just got it!! Dark gun powder.. total fire as usual!!! Ordered on monday at 1pm CST, and I had it Wednesday before noon. less than 36 hours TOR2DOOR. SV2 is the BEST vendor for H on DM. Order in good faith. They have my gratitude and respect. i'll prb order more today!!***** | m . . . r | ~ ฿0.01 |
| 2d 12h ☆ ☆ ☆ ☆ ☆ | Always always on point. Most reliable. | M . . . 1 | ~ ฿0.06 |
| 12:01 ☆ ☆ ☆ ☆ ☆ | Enter your comments here | h . . . 2 | ~ ฿0.3 |
| 2d 0h ☆ ☆ ☆ ☆ ☆ | Enter your comments here | C . . . 4 | ~ ฿0.05 |
| 2d 0h ☆ ☆ ☆ ☆ ☆ | Got this in the exact same process and time frame as if I ordered 1g. These guys are the best, product is the best i'm currently coming across on the DM | C . . . 4 | ~ ฿0.3 |
| 5d    ☆ ☆ ☆ ☆ ☆ | Enter your comments here | e . . . k | ~ ฿0.02 |
| 2d 15h ☆ ☆ ☆ ☆ ☆ | Amazing stealth, great product, great prices. My new fave | f . . . n | ~ ฿0.07 |
| 5d    ☆ ☆ ☆ ☆ ☆ | Enter your comments here | p . . . s | ~ ฿0.05 |
| 5d    ☆ ☆ ☆ ☆ ☆ | FE for trusted vendor! Dude always comes through | h . . . 1 | ~ ฿0.07 |

17. According to postal records, on or about May 25, 2018, the parcel related to this purchase was mailed by someone acting on behalf of SICKNESSVERSION2 accompanied with tracking number 9405 5016 9932 0155 7645 77. The parcel had a USPS acceptance or first en route scan listed as Phoenix, Arizona.

18. On or about June 12, 2018, the parcel was delivered to the USPIS-controlled location and was opened by case agents. There was no sender name listed on the parcel. Inside the parcel were four packages of "Haribo" Gold gummy bears. Concealed within one of the packages of gummy bears was a small silver foil pouch marked with the number "5." Inside the foil pouch was a small clear Ziploc baggie which contained a black tar like substance. Case agents field tested the black tar like substance. The black tar like substance field tested positive for heroin. The weight of the heroin, including the baggie was determined to be 6 grams.

### ii. Second Undercover Purchase

19. On or about July 25, 2018, case agents accessed the Dream Market on the TOR network and browsed items for sale from the vendor moniker SICKNESSVERSION2. Case agents then completed a purchase of 10 grams of "PURE GUNPOWDER HEROIN (UNCUT)." Case agents requested the parcel to be shipped to a USPIS-controlled location in the Eastern District of

6

California. At the time of the purchase, SICKNESSVERSION2 had approximately 940 reviews with a 4.80 (out of 5) star rating.

20. On or about July 25, 2018, under the terms and conditions of the vendor site, SICKNESSVERSION2 stated, "**We are back from vacation and ready to roll so order away**." The SICKNESSVERSION2 vendor site was on "vacation" mode from sometime on or about June 12, 2018 to on or about July 25, 2018.

21. On or about July 27, 2018, the parcel related to the purchase was mailed by someone acting on behalf of SICKNESSVERSION2 accompanied with tracking number EM061828731US.

22. On or about July 28, 2018, the parcel was delivered to the USPIS-controlled location and was opened by case agents. The sender name on the parcel was listed as "Sweets for my Sweet 2309 E Loyola Dr. Tempe, AZ 85282". Based on open source internet search, along with open source databases, I determined the business name on the package to be fictitious.

23. On or about August 6, 2018, case agents opened the parcel. Inside the parcel were five packages of Haribo Gold gummy bears. Concealed within two of the packages of gummy bears were small silver foil pouches marked with the number "5 (10)". Inside both of the foil pouches was a small clear Ziploc baggie that contained a hard compacted brown powdery substance appearing to be heroin. The weight of the suspected heroin, including the baggie, was 11 grams.

### iii. Third Undercover Purchase

24. On or about October 17, 2018, case agents accessed the Dream Market on the TOR network and browsed items for sale from the vendor moniker SICKNESSVERSION2. Case agents then completed a purchase of 5 grams of "PURE GUNPOWDER HERION (UNCUT)." Case agents requested the parcel to be shipped to a USPIS-controlled location in the Eastern District of California. At the time of the purchase, SICKNESSVERSION2 had approximately 1,800 reviews with a 4.85 (out of 5) star rating.

25. On or about October 18, 2018, the parcel related to the purchase was mailed by SICKNESSVERSION2 accompanied with tracking number EL827488014US.

7

26. On or about October 22, 2018, the parcel was delivered to the USPIS-controlled location and was opened by case agents. The sender name on the parcel was listed as "Hays Sweeties 4314 Nth 35th Ave., Phoenix AZ 85017." Based on open source internet search, along with open source databases, I determined the business name on the package to be fictitious. Inside the parcel were three packages of "Haribo Gold" gummy bears. Concealed within one of the packages of gummy bears was a small silver foil pouch marked with the number "5." Inside the foil pouch was a small clear Ziploc baggie that contained a dark brown substance. The substance field tested positive heroin. The weight of the heroin, including the baggie, was determined to be 6 grams.

### iv. Fourth Undercover Purchase

27. On or about December 18, 2018, case agents accessed the Dream Market on the TOR network and browsed items for sale from the vendor moniker SICKNESSVERSION2. Case agents then completed a purchase of 20 grams of "PURE GUNPOWDER HERION (UNCUT)." Case agents requested the parcel to be shipped to a USPIS-controlled location in the Eastern District of California. At the time of the purchase, SICKNESSVERSION2 had approximately 2,300 reviews with a 4.86 (out of 5) star rating.

28. On or about December 20, 2018, the parcel related to the purchase was mailed by someone working on behalf of SICKNESSVERSION2 accompanied with tracking number EM095034801US.

29. On or about December 22, 2018, the parcel was delivered to the USPIS-controlled location and was opened by case agents. The sender name on the parcel was listed as "Chirs Candyz 2324 S Dobson Ave Chandler AZ 85286." Based on open source internet searches, along with open source databases, I determined the business name on the package to be fictitious. Inside the parcel were two packages of "Haribo Gold" gummy bears that had been cut in half and taped together in the middle to look like one larger bag. Concealed within the packages of gummy bears was a small silver foil pouch marked with the number "2- 10's (20)." Inside the foil pouch were two small clear, nearly identical Ziploc baggies, both marked in red with "10 (2)." Each baggie contained a dark brown granular and chunky substance appearing to be heroin. The weight of the heroin, including the baggie, was determined to be 22 grams in

8

total (11 grams each). A small sample of the brown substance was removed from one of the baggies and field tested positive for heroin.

30. As of February 15, 2019, SICKNESSVERSION2 has 2,950 completed transactions on Dream Market with an average vendor rating of 4.88 out of 5. The majority of product listings on the SICKNESSVERSION2 vendor page are for heroin. SICKNESSVERSION2 also has listings for "ice," i.e. crystal methamphetamine.

### B. United States Postal Records

31. Case agents analyzed tracking number 9405 5016 9932 0155 7645 77 using USPS records and determined that the tracking number was part of an online purchase of a group of 100 prepaid USPS Priority Mail shipping labels purchased on or about May 15, 2018. The parcels were purchased by customer "jasoncka23." The Internet Protocol ("IP") address used to make the purchase was 98.165.31.245. The customer number and account was further identified in USPS system as belonging to "JASON ARNOLD" with addresses of the 1411 S. Cholla Place, Chandler, Arizona 85286 (referred to hereafter as the "ARNOLD RESIDENCE") and 590 N Alma School Rd., Ste. 12 B Chandler, AZ 85224 (referred to hereafter as the "ARNOLD BUSINESS"); contact telephone 480-570-5759; email address of jason.cka23@gmail.com; and another user name of "jason.cka23."

32. The same USPS customer profile also showed that this online purchase was paid by "Damaged Ink Tattoo and Body Piercing" (referred to hereafter as "DAMAGED") using a linked PayPal account. On or about May 16, 2018, according to UPSP records, the online purchase was processed and shipped to the name of JASON ARNOLD or DAMAGED to the ARNOLD RESIDENCE. Further, the ARNOLD USPS account requested that the labels be preprinted with a return address listed as JEFF JOHNSON, "5151 E Washington St. Phoenix, AZ 85034." On or about May 18, 2018, the order of prepaid labels was delivered to ARNOLD RESIDENCE.

33. Analysis on the group of 100 prepaid labels showed the following:

    a. Approximately 98 of the labels entered the mail system. All 98 entered the mail system from Arizona, including from the cities of Phoenix, Tempe, Chandler, and

9

Mesa. Of the 98 labels, approximately 95 had full and/or partial destination address location information. Of these 95, there were approximately 86 different mailing destination addresses throughout the United States.

34. In addition, USPS records showed another approximately 1000 labels connected to ARNOLD and his USPS accounts from approximately April 9, 2018 to November 27, 2018. Specifically, case agents identified the following:

   a. Approximately 1,000 packages entered the U.S. mail system to destinations across the United States and internationally;

   b. Approximately 93 labels had the same or similar return address information listed in a similar manner as the second and third undercover heroin packages described above, such as using the terms, "Sweets for my Sweet"; "Candy Store"; "Sweet Tooth"; "Sweet Designs"; "Netties Sweet Emporium"; "Hays Sweetie"; "Haribos Sweets"; "Ware's Sweets Emporium"; and "D&A Sweet Emporium";

   c. Approximately $11,162 in USPS purchase orders of batch tracking numbers and USPS stamps.

35. In addition to the above USPS purchases made by ARNOLD, case agents identified a USPS "ClicknShip" account belonging to ARNOLD. In the ClicknShip account, case agents observed the same return address utilized on the previous labels, the same customer email address described above, and the same method of payment (i.e. a Paypal account linked to ARNOLD). Postal Inspectors identified that between May 11, 2018 and June 15, 2018 the ClicknShip account shipped over 130 parcels, including to France, Canada, Bangladesh, Australia and New Zealand.

36. In addition, USPS records show that ARNOLD's linked USPS accounts had a similar period of inactivity to the "vacation" mode for SICKNESSVERSION2 described above between the dates of on or about June 15, 2018 to on or about July 26, 2018.

37. On or about December 10, 2018, USPIS received information from a USPS employee at post office located in or around Gilbert, Arizona. The USPS employee stated that around 8:53

10

am, an individual, later identified as DAVID WHITE purchased approximately $100 worth of Sleeping Bear Dunes Priority Express stamps.   On the same day, another USPS employee collected mail from the blue collection box at the same location between 9:00 am and 10:00 am. The employee collected approximately 10 Priority Express packages with the Sleeping Bear Dunes stamps affixed to each one.   The mailings were addressed to various cities around the U.S. and the names listed on each return addresses were labeled either "Chris' Candyz" or "Chris's Candy's."

38.  On or about December 10, 2018, WHITE returned to the same post office and purchased approximately $300 worth of Sleeping Bear Dunes Priority Express stamps.  After the purchase, a USPS employee saw WHITE enter a 2008 dark color Dodge Charger, Arizona license plate KJ0775, bearing Vehicle Identification Number ("VIN") 2B3LA53H18H328626 (referred to hereafter as "SUBJECT VEHICLE 1").   SUBJECT VEHICLE 1 is registered to Elsie Matthews and Tami Soldevere, the mother of ARNOLD's girlfriend, Chantal Soldevere.

39.  On or about December 12, 2018, WHITE returned to the same Gilbert post office location and attempted to purchase more Sleep Bear Dunes Priority Express stamps, but his credit card was declined.  At the time of the attempted purchase, WHITE signed the receipt with the name "David."

40.  USPIS provided surveillance photographs of the person (WHITE) purchasing the Sleeping Bear Dunes Priority Express stamps.



41. A Facebook page belonging to a person named "Dave White" listed the Facebook accounts of ARNOLD and Chantal Soldevere as a "friend." Photos of "David White" on this Facebook account (one of which is show below) appears to match the individual show in the USPS surveillance photographs shown and described above.



42. In addition, case agents reviewed an inmate photograph for "David L. White" and compared this photograph to USPS surveillance. The inmate photograph for "David L. White"

12   * White was previously incarcerated in Arizona.

appeared to be the same person from the USPS surveillance photographs show and described above.

43. On or about December 12, 2018, a USPIS agent saw an incoming parcel from Wells Fargo at the Gilbert Post Office going to "David Lee White," at ARNOLD'S address at 1411 S. Cholla Pl, Chandler, AZ 85286.

44. From on or about December 3, 2018 to on or about December 19, 2018, a bank debit card ending in 2932 was used by WHITE to purchase approximately $1,780 worth of USPS stamps. In addition, case agents identified at least 29 packages with accompanied tracking numbers tied to WHITE that lists "CHRIS' CANDYZ," or "CHRIS'S CANDYZ" as the sender to destinations throughout the United States.

45. On or about December 26, 2018, a US Postal employee in Arizona advised case agents that a female customer attempted to purchase 12 Sleeping Bear Dunes Express mail stamps. The employee observed the woman exit a black Dodge Charger and then enter the post office. Further, the employee stated that the woman left the post office, then returned to the same black Dodge Charger.

46. According to the same employee, after the woman returned to SUBJECT VEHICLE 1, a person matching the description of WHITE exited the driver's side and dropped several items into a blue postal collection box just outside the front lobby door at the Post Office. Within minutes of this drop off, a US Postal employee pulled the items from the postal collection box and saw several mailings which listed "Chris's Candy's" and "Sweet Tooth" as the sender with the same return address of "3939 Potter Rd., Phoenix, AZ 85050."

47. In addition, the employee noted that affixed to each of the items were Sleeping Bear Dunes Express stamps. The employee described the female as very short. Maricopa County booking information for ALICIA MCCOY listed her height as 5'0." Further, after reviewing social media pictures of WHITE's girlfriend, ALICIA MCCOY, and Maricopa County booking photographs of ALICIA MCCOY, the US Postal employee positively identified ALICIA MCCOY as the female who purchased postage on or about December 26, 2018.

**C. *Methods and Means of Using the United States Mail***

13

48. Based on my experience, training, and discussions with other law enforcement officers experienced in drug investigations, I know that certain indicators exist when persons use the United States Mail to ship controlled substances from one location to another. Indicators for parcels that contain controlled substances and/or proceeds from controlled substances include, but are not limited to, the following:

    a. It is common practice for shippers of the controlled substances to use Express Mail and Priority Mail because the drugs arrive at the destination more quickly and on a predictable date. Express Mail and Priority Mail, when paired with a special service such as delivery confirmation, allow traffickers to monitor the progress of the shipment of controlled substances. Traffickers pay for the benefit of being able to confirm the delivery of the parcel by checking the Postal Service Internet website and/or calling the local post office.

    b. Packages containing controlled substances or proceeds have, in many instances, a fictitious return address, incomplete return address, no return address, a return address that is the same as the addressee address, or a return address that does not match the place from which the parcel was mailed. These packages are also sometimes addressed to or from a commercial mail receiving agency (*e.g.*, Mail Boxes Etc.). A shipper may also mail the parcel containing controlled substances from an area different from the return address on the parcel because: (1) the return address is fictitious or (2) the shipper is attempting to conceal the actual location from which the parcel was mailed. These practices are used by narcotics traffickers to hide from law enforcement officials the true identity of the persons shipping and/or receiving the controlled substances or proceeds.

    c. Individuals involved in the trafficking of controlled substances through the United States Mail will send and receive Express or Priority mailings on a more frequent basis than a normal postal customer. Drug traffickers use Express Mail and Priority Mail at a higher rate due to their frequent exchanges of controlled substances and the proceeds from the sale of these controlled substances.

    d. In order to conceal the distinctive smell of controlled substances from narcotics detection dogs, these packages tend to be wrapped excessively in bubble-pack and wrapping plastic, and are sometimes sealed with the use of tape around all seams. In addition, the parcels often contain other smaller parcels which are carefully sealed to prevent the escape of odors. Perfumes, coffee, dryer sheets, tobacco, or other substances with strong odors are also sometimes used to mask the odor of the controlled substances being shipped. Drug traffickers often use heat/vacuum

sealed plastic bags, and/or re-sealed cans in an attempt to prevent the escape of orders.

### D. *Open Source/Social Media*

49. Open source databases and/or queries, indicate that ARNOLD operates DAMAGED out of a storefront located at 590 N. Alma School Rd., STE 12B, Chandler, AZ 85224 (the ARNOLD BUSINESS).

50. Open source analysis on the email account jason.cka23@gmail.com and phone number 480.570.5759 yielded multiple social media accounts tied to ARNOLD. Those accounts had references to ARNOLD, DAMAGED, and words similar to SICKNESSVERSION2, such as "sikness23"; "Big Sickness"; "sick"; and "2sickmade3." In addition, ARNOLD has the word "SICK" tattooed on his neck.

51. According to open source queries, the IP address of 98.165.31.245 is tied to the geographical location of Chandler, Arizona.

52. According to their social media postings, ARNOLD and Chantal Soldevere are engaged. In addition, according to their social media postings, WHITE and ALICIA MCCOY are in a relationship.

### E. *Coinbase Records*

53. On or about July 12, 2018, Coinbase, Inc. provided customer account information for JASON ARNOLD to case agents. As background, Coinbase is a large cryptocurrency exchange company. A review of the information provided to Coinbase indicates that ARNOLD opened his Coinbase account on December 4, 2017. The account opening records contained the following information:

    a. Name: Jason Arnold;

    b. User ID: ending in 2b1e9b96;

15

    c.  Email: jason.cka23@gmail.com;

    d.  Street/Billing Address: 590 North Alma School Rd., #12B, Chandler, AZ (the ARNOLD BUSINESS);

    e.  Phone number: (480) 570-5759;

    f.  Linked bank account: Wells Fargo number 3408142424

    g.  ARNOLD self-identified his bank name or nickname with in the Coinbase system as "Wells Fargo – Sickness".

54. The overall pattern of activity on the account was that ARNOLD received Bitcoin into the account from external addresses and anonymous sources; he then sold Bitcoin to Coinbase in exchange for US currency; and then transferred the US currency to his linked Wells Fargo bank account ending in 2424, specifically:

    a.  Between December 7, 2017 and July 9, 2018, ARNOLD's Coinbase account received approximately 20 Bitcoin and sold over 20 Bitcoin in exchange for approximately $143,000 that was then transferred to ARNOLD's linked Wells Fargo bank account ending in 2424;

    b.  Between March 30, 2018 and June 12, 2018, ARNOLD received at least six Bitcoin transfers from external addresses totaling approximately $9,288.

    c.  On or about May 23, 2018, ARNOLD made an electronic withdrawal to the linked Wells Fargo bank account ending in 2424 for approximately $3,187 (this is around the same date of the first undercover purchase, described above);

    d.  After on or about July 9, 2018, ARNOLD's Coinbase account does not appear to have any further activity and the account closed.

55. In December 2018, Coinbase provided customer account information to case agents for Soldevere to case agents. A review of the information indicated that Soldevere opened a

Coinbase account ending in 9b8ee31 on or about July 12, 2018 (which is around the same time period that ARNOLD stopped using his Coinbase account, as described above) with the following information:

      a.  Name: Chantel Soldevere;

      b.  Street Address: 1411 South Cholla Place, Chandler, AZ (ARNOLD RESIDENCE);

      c.  Occupation: Bartender at Gringos;

      d.  Wells Fargo linked bank account number 2498572680.

56. The overall pattern of activity on the account was that Soldevere received Bitcoin into the account; she then sold it to Coinbase in exchange for US currency; and then she withdrew the US currency to her connected Wells Fargo bank account ending in 2680, specifically:

      a.  Between July 14, 2018 and October 28, 2018, Soldevere's received approximately 19 Bitcoin transfers and sold approximately 19 Bitcoin, for approximately $128,885, which was then transferred to Soldevere's linked Wells Fargo bank account ending in 2680;

      b.  On or about July 25, 2018, Soldevere made electronic withdrawals of approximately $8,000 and $2,320 to the linked Wells Fargo bank account ending in 2680 (this is around the same date of the second undercover purchase, as described above);

      c.  On or about October 20, 2018, Soldevere made electronic withdrawals of approximately $2,636 and $3,551 to the linked Wells Fargo bank account ending in 2680 (this is around the same date of the third undercover purchase, as described above);

      d.  On or about October 28, 2018, Coinbase closed the account for suspicious activity.

57. In December 2018, Coinbase, Inc. provided customer account information to case agents for DAVID WHITE. The account was opened on or about September 19, 2018 and had the following associated information:

    a. Name: David White;

    b. User ID: ending in 23117b9;

    c. Email: bigdada1323@gmail.com;

    d. Street/Billing Address: 1411 S Cholla Pl, Chandler, AZ 85286 (ARNOLD RESIDENCES);

    e. Phone number: (480) 313-5693; (480) 329-6147;

    f. Linked bank account: Bank of America number 457039618870.

58. The account record showed that from on or about November 12, 2018 to on or about December 26, 2018 the account sold approximately 12.693 Bitcoin to Coinbase in exchange for approximately $54,803 in U.S. currency, which was then transferred to WHITE's linked Bank of America account ending in 8870.

59. In December 2018, Coinbase, Inc. provided customer account information to case agents for ALICIA MCCOY. The account was opened on or about November 21, 2018 and had the following associated information:

    a. Name: Alicia McCoy;

    b. User ID: ending in 09a511;

    c. Email: amccoy1111@yahoo.com;

d.  Street/Billing Address: 1411 S Cholla Pl, Chandler, AZ 85286 (ARNOLD RESIDENCES);

e.  Phone number: (602) 551-9123;

f.  Linked bank account: Bank of America number 457039903831.

60.  Account records showed that from on or about November 24, 2018 to on or about January 14, 2019 ALICIA MCCOY sold approximately 13.285 in Bitcoin to Coinbase in exchange for approximately $61,874 in U.S. currency, which was then transferred to ALICIA MCCOY's linked Bank of America account ending in 3831.

F.  ***Google Records***

61.  In September 2018, Google provided information to case agents for email account jason.cka23@gmail.com. The account had the following information:

a.  Name: Jason Arnold

b.  Status: Enabled

c.  Login events from IP: 98.165.31.245

d.  Created on: 3/20/2011

e.  SMS: +14805705759

62.  The records showed dozens of login events from IP 98.165.31.245 between April 18, 2018 and August 23, 2018. This is the same IP address associated with USPS login events described above.

**G.** *Bank Records*

19

63. In September 2018, Wells Fargo provided information to case agents for the bank account listed on ARNOLD's Coinbase account. A review of the records for account ending in 2424 showed the following account opening information:

    a.   Name: Jason K Arnold;

    b.   Street/mailing address: 1411 S Cholla Place, Chandler, AZ (ARNOLD RESIDENCE);

    c.   Current Employer: Damaged Ink;

    d.   Debit Card: ending in 5712

64. Analysis of the Wells Fargo records showed the following:

    a.   Between on or about May 6, 2018 and on or about July 31, 2018, ARNOLD's had purchases and debited items from USPS totaling over $12,800;

    b.   A Coinbase.com electronic deposit on May 23, 2018 for approximately $3,187 (which corresponds to first undercover purchase of heroin from SICKNESSVERSION2 on May 23, 2018).

### H. Surveillance

65. On December 28, 2018, case agents conducted surveillance at the Chandler Andersen Springs Post Office. At approximately 1:09 PM, case agents saw SUBJECT VEHICLE 1 arrive at the post office. A female, later identified as ALICIA MCCOY, exited the driver side of the vehicle and went inside the post office. Case agents followed her inside. When she got to the clerk, ALICIA MCCOY asked for ten Priority Mail stamps and twenty Express Mail stamps for a total purchase of $561.00. After the purchase, ALICIA MCCOY returned to SUBJECT VEHICLE 1 and case agents observed her put on blue latex gloves. She stayed in SUBJECT VEHICLE 1 for approximately six minutes and appeared to place items in the envelopes. She eventually left the post office parking lot and then circled back to enter the drive-thru lane for the

20

blue collection box drop-off. Case agents watched her as she stuffed Express Mail envelopes into the blue collection box. She was still wearing the blue latex gloves. A US Postal Employee at the same Post Office then pulled the mail from the blue collection box and found several Express Mail envelopes which listed return names such as "SWEET TOOTH" and "CHRIS'S CANDY'S."

66. Case agents conducted surveillance at The Aloha Motel, located at 445 North Arizona Avenue, Chandler, Arizona (the "ALOHA MOTEL"), and observed SUBJECT VEHICLE 1 in the parking lot on of the motel December 31, 2018; January 2, 2019; January 3, 2019; January 4, 2019; and January 7, 2019. In addition, case agents observed WHITE entering and exiting the ALOHA MOTEL on several occasions. Based on surveillance, case agents believe that WHITE is residing in Room 44 of the ALOHA MOTEL.

67. On or about January 11, 2019, case agents conducted surveillance at the ALOHA MOTEL and observed a 1957 dark in color Chevrolet Bel Air, Arizona license plate HV HHA9, bearing VIN VC57L108570 (referred to hereafter as "SUBJECT VEHICLE 3") in the parking lot. SUBJECT VEHICLE 3 is owned by ARNOLD. In an Instagram post by ARNOLD on or about December 15, 2018, ARNOLD stated that he had purchased SUBJECT VEHICLE 3. Arizona registration records show that the vehicle was registered to Donna Lee Baxstrom and that she had filed an "owner notice of sale."

68. On or about January 16, 2019, case agents conducted surveillance at the ALOHA MOTEL and observed SUBJECT VEHICLE 1 and a 2010 dark color Dodge Challenger, Arizona license plate CHW4254, bearing VIN 2B3CJ5DT1AH220600 (referred to hereafter as "SUBJECT VEHICLE 2") parked next to each other directly in front of the ALOHA MOTEL. In addition, case agents observed ARNOLD exit SUBJECT VEHICLE 2 and enter the ALOHA MOTEL with WHITE. SUBJECT VEHICLE 2 is registered to JASON ARNOLD.

69. On or about January 31, 2019, case agents observed WHITE arrive at the ARNOLD RESIDENCE in an Audi matching the description of a 2008 dark in color Audi A6, Utah license plate L243D, bearing VIN WAUAH74F08N146527 (referred to hereafter as "SUBJECT VEHCLE 4"). WHITE exited the driver side door while an unknown male exited the passenger side door. The unknown male walked into the residence. WHITE went to the trunk of the vehicle and took out a piece of luggage and a duffel bag and walked inside the ARNOLD

21

RESIDENCE.  Soon after, SUBJECT VEHICLE 1 arrived and WHITE walked over to SUBJECT VECHILE 1 (which was then out of view to case agents).  SUBJECT VEHICLE 1 then departed and WHITE appeared to have left the vehicle.

70.  On or about February 1, 2019, SUBJECT VEHILCE 1 was at the Aloha Motel parked near the ALOHA MOTEL.

71.  On or about February 4, 2019, case agents observed a 2008 dark in color Audi A6 with VIN number WAUAH74F08N146527 (SUBJECT VEHICLE 4) at the Aloha Motel parked near the ALOHA MOTEL.  SUBJECT VEHICLE 4 is registered to DAVID WHITE.

72.  On or about February 4, 2019, case agents observed SUBJECT VEHICLE 4 parked on the street in front of the ARNOLD RESIDENCE.  ARNOLD was observed entering the passenger side of SUBJECT VEHICLE 4.  WHITE was the driver of the vehicle.  SUBJECT VEHICLE 2 was parked across the street from the ARNOLD RESIDENCE.

73.  On or about February 5, 2019, case agents observed SUBJECT VEHICLE 4 parked at the Aloha Motel near the ALOHA MOTEL.

74.  On or about February 5, 2019, at approximately 10:30 a.m., case agents observed SUBJECT VEHICLE 4 arrive at the ARNOLD RESIDENCE and park across the street.  A person matching the description of WHITE exited SUBJECT VEHICLE 4 and walked in the front door of the ARNOLD RESIDENCE.

75.  On or about February 5, 2019, at approximately 12:15 p.m., case agents initiated physical surveillance at the ARNOLD RESIDENCE.  At approximately 12:54 p.m., WHITE exited the ARNOLD RESIDENCE holding paper, mail, or documents, and keys.  WHITE walked to SUBJECT VEHICLE 4 and deposited the papers inside.  WHITE retrieved papers from the passenger area and placed them in the trunk of SUBJECT VEHICLE 4.  At approximately 1:00 p.m., ARNOLD exited the ARNOLD RESIDENCE and entered SUBJECT VEHICLE 2 and departed the area.  WHITE then entered SUBJECT VEHICLE 4 and departed the area.

76. On or about February 5, 2019, at approximately 1:00 p.m., case agents observed ARNOLD driving subject VEHICLE 2 and WHITE driving SUBJECT VEHICLE 4. Both vehicles were driving in tandem and arrived at the US post office located at 1900 W Carla Vista Drive, Chandler, Arizona. At approximately 1:09, case agents observed SUBJECT VEHICLE 2 at the blue delivery bins outside the post office; around the same time ARNOLD deposited parcels in to the blue bins  SUBJECT VEHICLE 2 then exited the drop bin lane and parked horizontally in front of the post office building. At this time, SUBJECT VEHICLE 4 parked in a space behind SUBJECT VEHICLE 2 and WHITE exited SUBJECT VEHICLE 4. WHITE then entered the post office.

77. Approximately one to two minutes later, WHITE exited the post office with multiple USPS parcels and entered SUBJECT VEHICLE 4. At approximately 1:13 p.m., WHITE (driving SUBJECT VEHICLE 4) and ARNOLD (driving SUBJECT VEHICLE 2) departed the post office in tandem.

78. On or about February 5, 2019, USPIS confirmed that 10 USPS Express parcels and one USPS Priority parcel matching the characteristics of the previous parcels ~~sent by~~ *ordered from* SICKNESSVERSION2 had been dropped in the blue USPS bins outside at the post office described above.

### I.   *December 26, 2018 ARNOLD and WHITE Contact with Law Enforcement*

79. On December 26, 2018, while driving SUBJECT VEHICLE 3, ARNOLD was pulled over by Mesa Police Department detectives and other officers. The police were responding to a shots fired call made near an apartment complex in Mesa, Arizona. One of the detectives observed a person matching the description of the suspect who had fired the weapons as a back seat passenger in SUBJECT VEHICLE 3. The officers ordered all occupants to exit the vehicle. ARNOLD was the driver of SUBJECT VEHICLE 3 and WHITE was the front seat passenger.

80. One of the officers conducted a pat-down of WHITE because of the initial call of shots fired and the weapon having not been located. WHITE consented to a search of his front pant pocket. In WHITE's front left pocket, the officer located approximately $4,000 in cash, a plastic baggie with "420" written on it containing a black brownish tar substance appearing to be heroin, and another plastic baggie containing a brownish powder substance appearing to be heroin. WHITE told the officer that the large amount of cash was proceeds from buying and selling cars

23

with ARNOLD. The substances in the baggies field tested positive for heroin. The total amount of heroin was approximately 6.3 grams. Arresting officers also found on ARNOLD approximately 1.8 grams of a substance that field tested positive for heroin and approximately $4,343 in cash. WHITE and ARNOLD were arrested on scene. They have since been released from police custody.

## VI.    REQUEST FOR SEALING

81. Finally, your affiant respectfully requests that this Court issue an order restricting, until further order of the Court, this case, to include, the Application and Arrest Warrants. I believe that restricting these documents are necessary to protect the identity of cooperating individuals, because the items and information to be seized are relevant to an ongoing investigation into a criminal organization, and not all of the targets of this investigation will be searched at this time. Based upon my training and experience, your affiant has learned that online criminals actively search for criminal Affidavits and Arrest Warrants via the Internet and disseminate them to others actively seeking out information over the Web and other sources concerning law enforcement activity in this arena. Accordingly, premature disclosure of the contents of this Affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

## VII.    CONCLUSION

82. Based on the facts set forth in this Affidavit, I believe there is probable cause that JASON ARNOLD, DAVID WHITE, and ALICIA MCCOY have committed the crimes of 21 U.S.C. § 841(a)(1) (Distribution of a Controlled Substance) and 21 U.S.C. § 846 (Conspiracy to Distribute a Controlled Substance). Accordingly, I respectfully request the issuance of arrest warrants for JASON ARNOLD, DAVID WHITE, and ALICIA MCCOY.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

SA Daniel M Bryant
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on: 2/15/2019

The Honorable Carolyn K. Delaney
UNITED STATES MAGISTRATE JUDGE

Approved as to Form:

Grant B. Rabenn
Assistant U.S. Attorney

25

/s/ GBR
**AUSA INITIALS**

## PENALTY SLIP FOR CRIMINAL COMPLAINT

**DEFENDANTS:**  **JASON ARNOLD**
                **DAVID WHITE**
                **ALICIA MCCOY**

**COUNT ONE (all defendants):**

    VIOLATION:     21 U.S.C. §§ 846 and 841(a)(1), 841(b)(1)(C)
                           - Conspiracy to Distribute a Controlled
                           Substance

    PENALTY:       Up to 20 years imprisonment
                           Up to $1,000,000 fine
                           Mandatory 3 years supervised release
                           Forfeiture

**COUNT TWO (all defendants):**

    VIOLATION:     21 U.S.C. § 841(a)(1) & (b)(1)(C) -
                           Distribution of a Controlled Substance

    PENALTY:       Up to 20 years imprisonment
                           Up to $1,000,000 fine
                           Mandatory 3 years supervised release
                           Forfeiture

1